UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **PRACTICE INTERACTIVE, INC.,** | § § § | |
| *Plaintiff*, | § § | |
| v. | § § § | CIVIL ACTION NO. 1:20-cv-645 |
| **GREGORY CANDELARIO and TISSUE CULTURE RESEARCH AND DEVELOPMENT, LLC,** | § § § § § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Alexander Candelario ("Alexander") is the sole director, controlling shareholder, and CEO of Practice Interactive, Inc. ("PI"), and the father of Defendant Gregory Candelario ("Gregory"). Gregory desired to start a business in the burgeoning cannabidiol ("CBD") industry, and Alexander assisted individually and as CEO and controlling shareholder of PI by allowing Gregory to start a business within PI called Organic Bio Labs ("OBL") and to operate that business as its CEO. Alexander also provided Gregory with access to a PI sub-account ("OBL sub-account") and credit card of PI in order to make necessary business-related purchases and to pay business-related expenditures.

Gregory and Alexander ultimately had a falling out as a result of Gregory's continued misconduct as CEO of OBL. Gregory misappropriated a $1 million check payable to PI for OBL product by destroying the check and directing the drawer of the check to wire the money into the checking account of a competing business he started called Tissue Culture Research & Development, LLC ("TCRD") as opposed to the OBL sub-account from which Gregory was to run the business. On information and belief, Gregory is using these misappropriated funds for his

own personal enrichment and as capital for TCRD. He has misused PI's funds and made extravagant, unauthorized charges on PI's credit card for his own personal enrichment.

Gregory also wrongfully acquired an industrial-grade gummy-manufacturing machine that PI paid the initial deposit on by paying the remaining balance owed on the machine using funds he misappropriated from PI and by having the machine shipped to TCRD without PI's authorization. On information and belief, Gregory, or those acting on his behalf and subject to his control, has also intentionally and maliciously damaged Plaintiff by sabotaging OBL manufacturing equipment and stealing bottles that are used to store and sell product. On information and belief, Gregory, or those acting on his behalf and subject to his control, also powered down a refrigeration unit where a strategic partner and customer of PI stores resin to manufacture gummies, resulting in the resin melting and being destroyed, causing approximately $2,000,000.00 in damages. Plaintiff brings suit to recover for the damages caused by Defendants' intentional, malicious, and wrongful acts, and to prevent further irreparable harm from occurring in the future.

## I.
## THE PARTIES

1. Plaintiff PI is a Texas for profit corporation with its principal place of business in Austin, Travis County, Texas.

2. On information and belief, Defendant Candelario is a resident of Maricopa County, Arizona and a citizen of the State of Arizona. Candelario may be served with process at 566 East Germann Road, Suite 101, Gilbert, Arizona 85297 or wherever else he may be found.

3. According to the Arizona Secretary of State, Defendant TCRD is an Arizona limited liability company with its principal place of business at 7150 W. Roosevelt, Phoenix, Arizona 85043. On information and belief, TCRD no longer operates its business at this address.

TCRD may be served with process by serving its registered agent and member, Gregory Candelario at 566 East Germann Road, Suite 101, Gilbert, Arizona 85297 or wherever else he may be found.

## II.
## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 based on diversity of citizenship and the amount in controversy exceeds, exclusive of interests and costs, the sum of $75,000.

5. The Court has personal jurisdiction over Defendants because they have maintained minimum contacts with the State of Texas sufficient to subject them to personal jurisdiction consistent with due process under the Fourteenth Amendment of the United States Constitution. Defendants have purposefully availed themselves of the benefits and protections of Texas by establishing minimum contacts with Texas, and the Court's exercise of jurisdiction over Defendants does not offend traditional notions of fair play and substantial justice.

6. Many of the acts or omissions giving rise to this suit occurred in Texas. Plaintiff's nutritional supplements business, known as OBL, was operated largely under PI, which has its principal place of business in Austin, Texas. Instead of running the business under PI, Defendants misused the OBL sub-account and credit card to cover highly extravagant personal expenditures and for purchases that benefited TCRD. The OBL sub-account is maintained and accessed by PI at a Texas branch of Chase Bank. Further, Defendants misappropriated a $1 million check to be paid to PI in Texas and a gummy-manufacturing machine that PI made the down payment on in Texas.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because all or a part of the events giving rise to the causes of action asserted herein took place in the Austin Division of the Western District of Texas where Plaintiff has its principal place of business.

### III.
### FACTUAL BACKGROUND

**A.     The Parties.**

8. PI does business as Intiva Health. Intiva Health was founded in 2006 as a physician practice management company. Today it sells the Ready Doc software platform. Ready Doc provides, among other things, HIPAA compliant messaging and credentialing solutions to healthcare workers. Information about Intiva Health's products and services can be found at www.intivaahealth.com.

9. Alexander is the sole director of PI and controls its operations. He is a retired marine officer and was a former partner at a major accounting firm specializing in forensic accounting. Alexander has extensive experience in healthcare operations, mergers, acquisitions, and managing and founding multiple business in the healthcare space.

10. Gregory is Alexander's adult son. Gregory desired to start a business in the burgeoning CBD industry, and Alexander assisted individually and as CEO and controlling shareholder of PI by allowing Gregory to start the OBL business within PI and to operate that business as its CEO. The OBL business includes the manufacture of nutraceuticals, gummy bears, and supplement formulations, as well as serving as a value-added reseller. Alexander also provided Gregory with access to the OBL sub-account and a credit card of PI in order to make necessary business-related purchases and to pay business-related expenditures.

11. At such time as Alexander deemed appropriate based on Gregory's performance, Alexander intended to move the OBL business into another entity, give Gregory a 75% ownership

share in that entity, and retain a 25% share for PI. Corporate formation and organization documents were never prepared formalizing the company or its ownership and management structure due to Defendants' wrongful conduct and Alexander and Gregory's relationship as father and son.

12.     On or about March 14, 2019, instead of operating the OBL business, Gregory formed a competing Arizona-based company called TCRD. Gregory has also engaged in numerous acts of corporate malfeasance more specifically set forth below in a concerted and malicious effort to damage OBL and Plaintiff.

**B.      Defendants' Wrongful Conduct.**

  **1.     *Improper use of OBL sub-account and PI credit card.***

13.     Defendants have used the OBL sub-account and PI credit card to which Gregory was given access not for legitimate OBL business-related purchases and expenses, but instead to improperly enrich Defendants.

14.     Examples of unauthorized purchases Defendants made using PI's American Express credit card include the following:

| Date | Description | Amount | Category |
|---|---|---|---|
| 5/31/2019 | COSMIC CONNECTIONS LLC | 24,514.00 | Merchandise & Supplies-Florists & Garden |
| 6/18/2019 | COSMIC CONNECTIONS LLC | 20,270.40 | Merchandise & Supplies-Florists & Garden |
| 6/27/2019 | CASA AMIGOS | 1,620.25 | Restaurant-Restaurant |
| 6/29/2019 | El Hefe Scottsdale | 4,074.25 | Restaurant-Restaurant |
| 6/29/2019 | El Hefe Scottsdale | 6,512.00 | Restaurant-Restaurant |
| 6/29/2019 | HI FI KITCHEN & COCKTAILS | 1,688.13 | Restaurant-Restaurant |
| 7/29/2019 | RIOT HOUSE | 1,596.50 | Restaurant-Bar & Café |
| 8/4/2019 | El Hefe Scottsdale | 2,893.00 | Restaurant-Restaurant |
| 8/5/2019 | PRETTY PLEASE | 1,622.90 | Restaurant-Restaurant |
| 8/11/2019 | CASA AMIGOS | 3,809.25 | Restaurant-Restaurant |
| 8/17/2019 | CASA AMIGOS | 2,779.97 | Restaurant-Restaurant |
| 8/26/2019 | CASA AMIGOS | 1,047.58 | Restaurant-Restaurant |
| 8/29/2019 | HYDE SUNSET KITCHEN & COCKTAILS | 2,074.87 | Restaurant-Restaurant |
| 8/30/2019 | HI FI KITCHEN & COCKTAILS | 2,221.92 | Restaurant-Restaurant |
| 9/2/2019 | HI FI KITCHEN & COCKTAILS | 2,863.63 | Restaurant-Restaurant |
| 9/5/2019 | CASA AMIGOS | 3,166.63 | Restaurant-Restaurant |
| 9/8/2019 | HI FI KITCHEN & COCKTAILS | 4,551.73 | Restaurant-Restaurant |
| 9/9/2019 | AIRBNB | 2,474.55 | Travel-Travel Agencies |
| 9/9/2019 | HI FI KITCHEN & COCKTAILS | 6,936.02 | Restaurant-Restaurant |
| 9/12/2019 | AIRBNB | 1,269.00 | Travel-Travel Agencies |
| 9/20/2019 | HI FI KITCHEN & COCKTAILS | 3,001.12 | Restaurant-Restaurant |
| 9/21/2019 | OMNIA NIGHTCLUB | 5,130.17 | Restaurant-Bar & Café |
| 9/23/2019 | CASA AMIGOS | 1,862.86 | Restaurant-Restaurant |
| 9/25/2019 | RODEO RANCH | 1,337.22 | Restaurant-Bar & Café |
| 9/27/2019 | PAYPAL *EQUICHILL | 1,519.50 | Merchandise & Supplies-General Retail |

| Date | Description | Amount | Category |
|---|---|---|---|
| 9/30/2019 | CASA AMIGOS | 1,090.74 | Restaurant-Restaurant |
| 9/30/2019 | HI FI KITCHEN & COCKTAILS | 1,414.33 | Restaurant-Restaurant |
| 10/15/2019 | MAGNOLIA 870 | 1,761.22 | Merchandise & Supplies-Electronics Stores |
| 10/15/2019 | MOR FURNITURE GILBERT | 2,152.77 | Merchandise & Supplies-Furnishing |
| 10/20/2019 | CASA AMIGOS | 1,580.49 | Restaurant-Restaurant |
| 10/21/2019 | CASA AMIGOS | 2,104.93 | Restaurant-Restaurant |
| 10/31/2019 | THE WARWICK | 2,626.94 | Restaurant-Restaurant |
| 11/3/2019 | HI FI KITCHEN & COCKTAILS | 3,081.40 | Restaurant-Restaurant |
| 11/3/2019 | HI FI KITCHEN & COCKTAILS | 5,939.64 | Restaurant-Restaurant |
| 11/23/2019 | HI FI KITCHEN & COCKTAILS | 2,453.87 | Restaurant-Restaurant |
| 12/2/2019 | BOTTLED BLONDE | 2,936.24 | Restaurant-Restaurant |
| 12/19/2019 | STANDARD RESTAURANT-MESA | 1,369.99 | Business Services-Office Supplies |
| 12/20/2019 | VOYAGES A LA CARTE UCUMMING | 1,332.42 | Travel-Airline |
| 12/21/2019 | Louis Vuitton | 1,231.77 | Merchandise & Supplies-General Retail |
| 12/21/2019 | WILLIAMS SONOMA | 1,077.95 | Merchandise & Supplies-Internet Purchase |
| 12/30/2019 | BOTTLED BLONDE | 1,832.33 | Restaurant-Restaurant |
| 12/30/2019 | BOTTLED BLONDE | 2,191.22 | Restaurant-Restaurant |
| 12/30/2019 | CASA AMIGOS | 1,332.89 | Restaurant-Restaurant |
| 12/31/2019 | TOCA MADERA SCOTTSDALE | 3,028.75 | Restaurant-Restaurant |
| 1/12/2020 | Best Buy | 5,774.00 | Merchandise & Supplies-Electronics Stores |
| 1/12/2020 | HI FI KITCHEN & COCKTAILS | 1,437.04 | Restaurant-Restaurant |
| 1/27/2020 | HI FI KITCHEN & COCKTAILS | 1,181.99 | Restaurant-Restaurant |

15. Examples of unauthorized purchases Defendants made using the OBL sub-account include the following:

| Posting Date | Description | Amount |
|---|---|---|
| 5/20/2019 | LOUIS VUITTON #36 SCOTTSDALE AZ    219970  05/18 | (2,755.28) |
| 7/15/2019 | LOUIS VUITTON #36 SCOTTSDALE AZ    203979  07/13 | (1,469.48) |
| 7/16/2019 | EL HEFE SCOTTSDALE SCOTTSDALE AZ    07/14 | (2,352.25) |
| 7/16/2019 | EL HEFE SCOTTSDALE SCOTTSDALE AZ    07/14 | (3,272.25) |
| 7/23/2019 | EL HEFE SCOTTSDALE SCOTTSDALE AZ    07/21 | (1,558.25) |
| 7/24/2019 | NEIMAN MARCUS #12 415-3623900 CA    07/22 | (1,681.75) |
| 9/16/2019 | LOUIS VUITTON #142 LAS VEGAS NV    620815  09/14 | (1,623.75) |
| 10/7/2019 | HI FI KITCHEN & COCKTAI SCOTTSDALE AZ    10/05 | (3,788.84) |
| 10/8/2019 | HI FI KITCHEN & COCKTAI SCOTTSDALE AZ    10/06 | (1,490.73) |
| 10/21/2019 | HI FI KITCHEN & COCKTAI SCOTTSDALE AZ    10/19 | (2,105.67) |
| 10/21/2019 | HI FI KITCHEN & COCKTAI SCOTTSDALE AZ    10/18 | (1,072.38) |
| 11/25/2019 | CHANEL #1 HONOLULU HI    017332  11/25 | (1,125.80) |
| 2/3/2020 | HI FI KITCHEN & COCKTAI SCOTTSDALE AZ    02/01 | (3,087.01) |

16.     These purchases and expenditures illustrate that Defendants were repeatedly running up huge tabs at restaurants, bars, night clubs, and high-end retail outlets such as Chanel #1, Louis Vuitton, and Neiman Marcus for Gregory's personal enrichment. Other purchases were made to further and develop the TCRD business. Upon learning of these unauthorized expenditures, Alexander cut Gregory off from these accounts, but later restored his access after receiving promises from Gregory that he would only use these accounts for OBL business-related purchases. Upon learning that Gregory broke his promise and continued making unauthorized purchases, Gregory was cut off again for good.

**B.**   *Misappropriation of checks and funds payable to PI.*

17.   Defendants also misappropriated a $1 million check dated April 20, 2020 that was drawn by PS Global, a customer of PI, and payable to PI as a down payment on OBL products. Defendants accomplished this wrongful act by destroying the check and directing PS Global to wire the funds to a TCRD account as opposed to PI's account. On information and belief, Gregory is using these misappropriated funds for his personal use and to fund TCRD.

18.   In addition to this $1 million check, Defendants utilized a similar scheme with PS Global directing PS Global to deposit additional amounts owed to PI totaling approximately $200,000 into Gregory's personal bank account.

**C.**   *Misappropriation of the 300 Machine.*

19.   In addition to misappropriating PI's funds, Defendants have also misappropriated a large, industrial-grade gummy manufacturing machine called the CLM300 Gummy Candy Machine ("300 Machine") that PI bought from Shanghai Fude Machinery Manufacturing Co., Ltd. ("Shanghai Fude") in order to manufacture and produce large quantities of gummies for resale. The sale price for the 300 Machine was $114,800, with $30,000 payable up front and the remainder due prior to delivery.

20.   On March 16, 2020, PI made an initial $30,000 down payment on the Gummy Machine.

21.   On April 29, 2020, Defendants paid the balance of the amount due and owing for the machine from the same TCRD account that contained the funds that Defendants misappropriated from PI.

22.   On May 15, 2020, Shanghai Fude issued an invoice for the 300 Machine to Defendants at 1922 E. Rosemary Dr., Chandler, AZ 85286. Defendants, without PI's knowledge,

caused the invoice to be issued to them as opposed to PI, who had paid the initial deposit on the 300 Machine.

23. On June 6, 2020, a bill of lading for the 300 Machine was issued, without PI's knowledge, stating that the Consignee was TCRD and that TCRD's address was 7150 W. Roosevelt, Phoenix, Arizona 85043. This is the same address that TCRD listed in its corporate filings with the Arizona Secretary of State.

24. As of the date of filing, the 300 Machine has been delivered to Defendants at 566 East Germann Road, Suite 101, Gilbert, AZ 85297. On information and belief, Defendants have installed, or are in the process of installing, the 300 Machine at TCRD's facility in order to manufacture gummies in direct competition with Plaintiff and its OBL business.

**D.** *Solicitation of Plaintiff's employees and theft of its property.*

25. PI operates a facility located at 1839 West Drake, Suite 101, Tempe, AZ 85296 that contains, among other things, OBL products, supplies, machinery, and equipment. On or about May 26, 2020, Joseph Guido and Francisco Palafox, two former OBL employees, unlawfully entered the OBL facility and stole numerous bottles and labels that PI uses to store, market, and sell OBL products valued at approximately $1,500.00. On information and belief, Gregory solicited Guido and Palafox to work for TCRD, these individuals do work for TCRD, and are subject to Gregory's control.[1] PI filed a police report as a result of this unlawful entry and theft and changed the locks to the facility.

---

[1] Gregory also solicited a third former employee of OBL that, on information and belief, currently works for TCRD. These three individuals represent 20% of OBL's employees. Another 30% of OBL's employees did not show up from work and abandoned their positions the day that Gregory was terminated as CEO of the OBL business.

26. On or about May 27, 2020, the night security guard for the facility noticed a vehicle driven by Amanda Kimes, an agent and employee of Defendants, approach the facility. When Ms. Kimes observed the security guard, she turned around and left.[2]

27. The next morning, OBL employees discovered that the facility had been broken into and that the keys and a control panel necessary to operate various machines used by OBL to manufacture gummies had been stolen. This theft occurred the day before a meeting that OBL was to have with PS Global, a major customer, to discuss transitioning Gregory out. Gregory was aware of this meeting and had told PS Global that only he could run the business and make product, and PS Global consequently wanted OBL to demonstrate its manufacturing capabilities to prove that it could meet PS Global's requirements.

28. In addition to the theft of the keys and control panel,[3] a refrigeration unit that a customer and business partner of PI owns and stores products in had been powered down in a manner that was not readily detectable, as it appeared that the refrigeration unit was still plugged in. In actuality it was not, and about a week after the break in, PI's customer and owner of the refrigeration discovered that the resin it had stored in the units to manufacture CBD products had melted and was no longer usable, causing approximately $2,000,000.00 in damages.

IV.
**CAUSES OF ACTION**

**COUNT 1: Conversion**
**(All Defendants)**

29. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

---

[2] Ms. Kimes has claimed that she did not drive the vehicle but instead lent it to Guido and Palafax.
[3] The stolen control panel was ultimately returned to the facility.

30. Plaintiff owned and had immediate right to possession of the $1 million check and other funds totaling approximately $500,000.00, the 300 Machine, and the bottles, labels, keys, and control panels for the machinery at its facility.

31. Defendants wrongfully exercised dominion and control over the $1 million check, and other funds payable to PI totaling approximately $500,000.00, by destroying the $1 million check and directing PS Global to wire the money into an account by TCRD, and by depositing the additional $200,000.00 in funds from PS Global into Gregory's personal checking account as opposed to the OBL sub-account from which Gregory was to run the OBL business. Defendants wrongfully exercised dominion and control over the 300 Machine by paying the remaining purchase price using funds misappropriated from PI and by having the machine delivered to an address of their choosing without PI's knowledge or consent. Defendants wrongfully exercised dominion and control over OBL bottles, labels, keys, and control panels by unlawfully entering into the OBL facility and stealing these items.

32. Plaintiff suffered injury as a result of Defendants wrongful actions, and seeks its actual damages, loss of value and/or loss of use, replacement or return of any converted property, and/or exemplary damages by way of this suit.

**COUNT 2:  Breach of Fiduciary Duties**
**(Gregory)**

33. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

34. Gregory was to run the OBL business as CEO with assistance from Alexander and as part of PI. Gregory owed fiduciary duties to PI of loyalty, utmost good faith, candor, to refrain from self-dealing, to act with integrity, to deal fairly and honestly, and of full disclosure as a corporate officer and employee of OBL, and as a result of the trust, influence, and confidence that

Alexander placed in Gregory to run the OBL business. Alexander relied on Gregory to act in OBL and PI's best interest by giving him access to the OBL sub-account and PI credit card.

35. Gregory breached his fiduciary duties by engaging in the wrongful conduct set forth in this Complaint.

36. Gregory's breach of his fiduciary duties proximately caused injury to PI and resulted in a benefit to Gregory. Plaintiff seeks its actual damages, exemplary damages, disgorgement, an accounting, and imposition of a constructive trust on any proceeds, funds, or property obtained as a result of the breach of fiduciary duty.

### COUNT 3: Money Had and Received
### (All Defendants)

37. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

38. Defendants hold money that belongs to Plaintiff in equity and good conscience.

39. Plaintiff seeks actual damages in the amount that Defendants received that belongs to Plaintiff and exemplary damages,

### COUNT 4: Aiding and Abetting Breach of Fiduciary Duty
### (TCRD)

40. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

41. Gregory owed PI fiduciary duties and TCRD knew this. Despite that knowledge, TCRD knowingly and actively participated in the breaches of fiduciary duty perpetuated by Gregory by, among other things: (a) depositing funds from the misappropriated PS Global check into a checking account owned by TCRD; (b) causing the 300 Machine to be delivered to a facility

at which TCRD conducts business instead of to PI; and (c) drawing down funds that belong to PI for the purpose of developing its own competing business.

42. TCRD's aiding and abetting Gregory's breach of fiduciary duty to Plaintiff proximately harmed Plaintiff, and as such, TCRD has become jointly and severally liable for all the damages Gregory caused by breaching his fiduciary duties to Plaintiff. Plaintiff seeks its actual damages, exemplary damages, disgorgement, an accounting, and imposition of a constructive trust on any proceeds, funds, or property obtained as a result of the breach of fiduciary duty.

## V.
## REMEDIES SOUGHT

### COUNT 1 – Application for Preliminary Injunction

43. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

44. There is a likelihood of success on the merits of Plaintiff's claims, and the balancing of the equities favors the issuance of a preliminary and eventual permanent injunction against Defendants. As a direct and proximate result of Defendants' conduct as described above, Plaintiff has suffered irreparable harm through the wrongful acquisition of funds, machinery, bottles, and labels owned by PI for the purpose of running a competing business, and damage to its goodwill with customers and employees. In addition, the resignation of Plaintiff's employees, coupled with the unpredictable loss of business from customers with whom Plaintiff has been working for a long period of time, has damaged the stability of Plaintiff's sales efforts, clientele, marketing techniques, and office stability. This, too, constitutes irreparable harm for which injunctive relief is uniquely suited. *Graham v. Mary Kay, Inc.*, 25 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2000, pet denied) ("A company's loss of goodwill, clientele, marketing techniques, office

stability and the like are not easily assigned a dollar value, but they qualify as 'probable injury' for purposes of injunctive relief.").

45. The total loss to Plaintiff cannot be accurately measured at this time, although actual damages are likely to exceed $3,750,000.00 at present. At this point, however, Plaintiff has no adequate remedy at law. Defendants have wrongfully acquired funds and machinery owed to Plaintiff in order to run a competing business, and without which Plaintiff's ability to run its business is substantially frustrated. Further, Defendants' unlawful actions of breaking and entering into the OBL facility to steal products, destroy resin, and sabotage production machinery reasonably calls into question the safety of Plaintiff's property and employees from further acts of destruction. Such harm qualifies for irreparable harm for which preliminary injunctive relief is uniquely appropriate.

46. Plaintiff has no adequate remedy at law, as the immediate harm Defendants have caused Plaintiff cannot be completely measured or calculated. Without immediate and permanent injunctive relief, Defendant's continued use of PI's wrongfully acquired funds will preclude Plaintiff from recovering those funds before they are spent by Defendants, and will allow Defendants to manufacture competing products with the help of the 300 Machine which belongs to Plaintiff.

47. The balancing of equities favors Plaintiff. The magnitude of the injury being suffered due to Defendants' unlawful conduct heavily outweighs whatever hardship Defendants could allege or prove from being restrained as requested below; besides, when conduct is willful (as Defendants' conduct clearly is), the Court need not balance hardship. *United States v. Marine Shale Processors*, 81 F.3d 1329, 1358-59 (5th Cir. 1996). Finally, the granting of the injunctive relief herein would not adversely affect public policy or interest.

48. Defendants would face no significant harm by complying with the injunctive relief sought herein, because the 300 Machine and wrongfully acquired funds do not belong to Defendants, and Defendants have no legal right to destroy Plaintiff's property. In contrast, in the absence of such an injunction, the damage to Plaintiff which could result from Defendants' continued possession and use of such items cannot be undone.

49. Plaintiff is willing to post a bond in the amount, if any, that the Court deems reasonably appropriate.

50. Consequently, Plaintiff requests a preliminary injunction under Fed. R. Evid. 65 against Defendants and their agents, servants, employees, and those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise, that:

   a. Defendants shall not use the 300 Machine to manufacture any products;
   b. Defendants shall maintain the 300 Machine in the same condition in which it was received;
   c. Defendants shall preserve any remaining funds derived from checks that were payable to PI; and
   d. Defendants shall not take any actions that result, either directly or indirectly, in the damaging of any of PI or OBL's property or products.

### COUNT 2 – Permanent Injunction

51. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

   a. Defendants shall not use the 300 Machine to manufacture any products;

    b.  Defendants shall maintain the 300 Machine in the same condition in which it was received;

    c.  Defendants shall preserve any remaining funds derived from checks that were payable to PI; and

    d.  Defendants shall not take any actions that result, either directly or indirectly, in the damaging of any of PI or OBL's property or products.

### COUNT 3 - Damages

52. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

53. Plaintiff requests that the Court award it its actual and consequential damages as proven at the time of trial.

### COUNT 4 – Exemplary Damages

54. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

55. Because Defendants have acted with actual malice or fraud with respect to the wrongful conduct discussed herein, Plaintiff is entitled to and requests an award of punitive damages against all Defendants under Texas law.

### COUNT 5 – Disgorgement/Forfeiture

56. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

57. Plaintiff requests the Court to disgorge from Defendants all funds, profits, property, or benefits obtained from Defendant's wrongful acts set forth above.

### COUNT 6 – Constructive Trust

58. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

59. Equity will impose a constructive trust to prevent one who obtains property by fraudulent means, or by breach of a confidential relationship, from being unjustly enriched. Due to the breaches of fiduciary duty and of confidential relationships as set forth above, Plaintiff requests the Court to impose a constructive trust over any money or property owned by and Defendant that can be traced back to the ill-gotten gains from the wrongful conduct outlined above.

### COUNT 7 – Accounting

60. Plaintiff repeats and re-alleges each of the foregoing paragraphs as if fully restated herein.

61. Plaintiff requests that Defendants be required to account for the funds it wrongfully misappropriated from PI and for its profits, if any.

## VI.
## JURY DEMAND

62. Plaintiff requests that their claims be tried before a jury and will timely pay the requisite jury fee.

## VII.
## PRAYER

WHEREFORE, Plaintiff Practice Interactive, Inc. respectfully prays for the following relief:

a. actual and consequential damages;

b. disgorgement of any unjust enrichment;

c. an accounting;

    d.  for injunctive relief as outlined above and determined by the Court;

    e.  punitive damages;

    f.  imposition of a constructive trust;

    g.  pre-judgment and post-judgment interest at the maximum non-usurious rate;

    h.  all taxable court costs; and

    i.  all other relief to which Plaintiff may show itself to be justly entitled.

Dated: June 19, 2020.              Respectfully submitted,

**MCGINNIS LOCHRIDGE LLP**
Jordan K. Mullins
State Bar No. 24070308
jmullins@mcginnislaw.com
Michael E. Kabat
State Bar No. 24050847
mkabat@mcginnislaw.com
600 Congress Avenue, Suite 2100
Austin, Texas 78701
(512) 495-6000
(512) 495-6093 (Fax)


By:  */s/ Jordan K. Mullins*
       Jordan K. Mullins

ATTORNEYS FOR PLAINTIFF PRACTICE INTERACTIVE, INC.